UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA G. ROMINGQUET, | No. 2:16-cv-01249 CKD |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born August 10, 1974, applied on April 10, 2013 for SSI, alleging disability beginning January 2, 2002. Administrative Transcript ("AT") 54, 140-144. Plaintiff alleged she was unable to work due to arthritis, scoliosis, depression and inability to stand for long. AT 166.

In a decision dated November 4, 2014, the ALJ determined that plaintiff was not disabled.[1] AT 22-29. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since April 10, 2013, the application date.
>
> 2. The claimant has the following severe impairments: back disorder, right shoulder disorder, arthritis, and obesity.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work, but she can never kneel, crawl, or climb

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

ladders, ropes, or scaffolds. She can only occasionally balance, stoop, crouch, and climb ramps and stairs. She must avoid concentrated exposure to hazards, which are defined as operational control of dangerous moving machinery and unprotected heights. She is also limited to jobs that can be performed while using a hand-held assistive device required for uneven terrain or prolonged ambulation.

5. The claimant has no past relevant work.

6. The claimant was born on August 10, 1974 and was 38 years old, which is defined as a younger individual age 18-44, on the date the application was filed.

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 10, 2013, the date the application was filed.

AT 22-29.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ's reasons for according "little weight" to the majority the opinion of Dr. Senegor, plaintiff's treating neurosurgeon, are not supported by substantial evidence; (2) the ALJ erred by failing to properly consider plaintiff's right shoulder impairment; (3) The ALJ erred in his evaluation of plaintiff's credibility; and (4) the Commissioner failed to sustain her burden of establishing that there is other work in the national economy that plaintiff can perform.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Dr. Senegor's Opinion

Dr. Senegor, a neurosurgeon, performed plaintiff's discectomy in September 2013 and provided follow-up care. AT 315-323. On August 4, 2014, Dr. Senegor noted that plaintiff "has made a slow and painful recovery." AT 580. He noted her complaints of "low back pain and no leg pain," her continued use of "significant amounts of pain medication," and her "significant limitations" on standing and walking. AT 580. Dr. Senegor further wrote that plaintiff's "general health is okay" and that her condition was "chronic and stable." AT 580.

In weighing Dr. Senegor's opinion, the ALJ wrote:

> Morris Senegor, M.D., a treating physician, stated on August 4, 2014 that the claimant could stand for less than 10 minutes and walk less than one block. Dr. Senegor further stated that the claimant needed an assistive device for prolonged ambulation. The portion of the opinion [regarding the assistive device] is given significant weight because it is consistent with the aggressive treatment that the claimant has received for her back disorder.

4

> However, the rest of the opinion understates the claimant's physical capacity and is given little weight for the following reasons. First, it is contradicted by the generally adequate physical functioning and normal gait that the claimant exhibited at physical examinations conducted after her back surgery. Second, it is contradicted by the admitted improvement in the claimant's lower extremity symptoms after the surgery (hearing testimony). Third, it is inconsistent with the lack of positive findings from a diagnostic image of her knees, hands, elbows, or hips. Finally, it is inconsistent with the claimant's admitted ability to help take care of two minor children and travel to the Philippines.

AT 27 (record citations omitted).

Plaintiff argues that the rejection of a portion of Dr. Senegor's opinion was unreasonable and that the ALJ gave substantial weight to a reviewing physician over plaintiff's treating neurosurgeon without sufficient reasons. Plaintiff cites Dr. Senegor's prescription of Fentanyl, an extremely potent painkiller, as evidence that she continued to be in significant pain in August 2014. Plaintiff further argues that "the lack of diagnostic imaging" in plaintiff's knees, hands, elbows, and hips had no bearing on Dr. Senegor's opinion, which was limited to her restrictions as a result of low back impairment. As to plaintiff's purported trip to the Philippines, plaintiff was not asked about this at the hearing. She later submitted a declaration to the Appeals Council that she had not taken such a trip, or even planned such a trip, since her alleged onset date in 2002. AT 582. Next, plaintiff asserts that the ALJ failed to consider that plaintiff had help in caring for her children when he cited Dr. Senegor's finding that she could "help take care of" minor children. AT 45, 177-178, 184. Finally, plaintiff argues that her "normal gait" was consistent with Dr. Senegor's findings and not a reason to discount them.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a

5

treating or examining medical professional only for "clear and convincing" reasons.  Lester , 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

Dr. Senegor's August 2014 opinion is brief and conclusory, consisting of a few short paragraphs and noting that plaintiff's "general health is okay."  There are no supporting notes or indication of a physical examination.  It appears that, prior to this "ten-month follow up appointment," Dr. Senegor last treated plaintiff in November 2013.  Dr. Senegor was plaintiff's surgeon, and nothing in his opinion suggests he had more than cursory knowledge of her overall physical limitations or daily activities.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.")

Moreover, Dr. Senegor's opinion of plaintiff's abilities was contradicted by the record, including medical notes indicating that plaintiff's gait was normal at various times in 2014 (AT 459, 507, 514, 546); that plaintiff's musculoskeletal exam was normal and non-tender in January 2014 (AT 387); and that plaintiff's lower back pain was "stable" in January 2014 (AT 398).  At the August 2014 hearing, plaintiff testified that, since her two back surgeries in 2013, the numbness in her legs had improved.  AT 43.  Although she arrived in a wheelchair, she conceded that she could walk with the aid of a cane or walker, and short distances with neither.  AT 40-41.  As to caring for her children, plaintiff testified that her husband was busy with school and it was

"hard for him to . . . be there," but that he helped her with cooking and cleaning. AT 45. Elsewhere in the record, plaintiff stated in 2013 that she got her children ready for school, took them to school, cooked for them, washed, helped with their homework, and got them ready for school the next day, though her husband had taken over "the chores" and cooking. AT 177-179. Plaintiff also stated in 2013 that she did various activities, including swimming, every other weekend. AT 181.

As to plaintiff's claimed levels of debilitating pain, the ALJ found plaintiff not fully credible, noting her "apparent lack of discomfort" during the hearing and concluding that "the record does not support [her] allegations of totally incapacitating symptoms."[2] AT 27-28.

Based on the objective medical evidence and record as a whole, the ALJ found plaintiff to require an assistive device for walking, but rejected her surgeon's opinion as to various other functional limitations. Overall, the ALJ provided multiple specific and legitimate reasons for assigning only "little weight" to that portion of Dr. Senegor's opinion, supported by substantial evidence in the record.

B. Right Shoulder Impairment

The ALJ found plaintiff's severe impairments to include right shoulder disorder. AT 22. Discussing this impairment in step four, the ALJ wrote:

> An MRI of the claimant's right shoulder dated May 20, 2013 indicated acromioclavicular joint capsular hypertrophy, moderate supraspinatus tendinosis, and mild tendon tears. She had tenderness and positive impingement signs in the right shoulder at a physical examination conducted on May 8, 2014. However, during a physical examination conducted on June 13, 2014, she demonstrated a full range of motion, good strength, and no more than mild tenderness in the right shoulder, which show that the condition improved.

AT 25-26 (record citations omitted).

Plaintiff argues that the ALJ "failed to properly consider any limitations flowing from [the] right shoulder impairment and erred on relying on the opinion of a state agency medical consultant who did not have updated evidence showing this impairment." (ECF No. 16-1 at 17.)

---
[2] This credibility finding is addressed below.

On June 13, 2014 plaintiff was examined by Dr. Bethune after being referred by Dr. Yeh for right shoulder pain following a May 2014 MRI. AT 521. Dr. Bethune noted that plaintiff had "mild anterior shoulder tenderness," a "good range of motion" in her neck, and "shoulder impingement tendinitis." AT 521-523. Dr. Bethune reviewed the MRI images and found "moderate supraspinatus tendinosis, slightly worsened from the prior examination" and "[n]ew mild intrasubstance tearing of the footprint fibers of the infraspinatus tendon." AT 525. He referred plaintiff to physical therapy and noted a "possible injection." AT 527. See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (conservative course of treatment suggests "a lower level of both pain and functional limitation."). There is no indication that plaintiff actually had physical therapy for her shoulder, nor that she underwent surgery on her right shoulder. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995) (failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment). In July 2014, when plaintiff returned to Dr. Yeh, she spoke largely of psychiatric problems and did not mention her right shoulder, nor was she prescribed any further treatment for this issue at the exam. AT 545-547.

At the hearing, plaintiff was asked about "the need for any further surgeries" and did not mention her right shoulder. AT 42. She testified that the heaviest thing she could lift was a gallon of milk, weighing about eight pounds, and again did not mention shoulder pain. AT 44. The ALJ factored this limitation into plaintiff's sedentary RFC, which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967. Plaintiff has not cited medical evidence of "additional functional limitations as a result of [her] shoulder impairment." ECF No. 20 at 8. The court finds no error in this portion of the ALJ's step four assessment.

C. Credibility

Plaintiff also challenges the ALJ's adverse credibility finding. Specifically, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence

8

and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AT 26.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ found that plaintiff's "allegations of debilitating physical symptoms are not well supported by the medical evidence of record."[3] AT 26. He cited evidence that the treatment for plaintiff's musculoskeletal impairments "was quite effective in reducing her symptoms." AT 26; see AT 25 ("The medical evidence reflects that her treatment was quite effective in reducing her symptoms. Her musculoskeletal and neurological function was often found to be essentially normal at physical examinations conducted during the period from January 2014 through June 2014. She also frequently demonstrated normal gait at physical examinations [in 2014]. In addition, her lower extremity symptoms admittedly improved after the surgery.") (record citations omitted). The ALJ stated that plaintiff's physical functioning had been "generally adequate since 2014, as evidenced in the treatment records," and there were "no relevant positive findings from a diagnostic image of her knees, hands, elbows, or hips." AT 26.

The ALJ next noted that "plaintiff worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." AT 26. Putting aside plaintiff's alleged trip to the Philippines, which she denies, the ALJ continued that plaintiff "showed no persuasive evidence of debilitating pain or discomfort while testifying at the hearing," a fact "given some slight weight" when determining her credibility. AT 27. As to plaintiff's multiple alleged side effects from the use of medications, "the absence of any documented concerns from any doctor in the record indicates that those side effects are generally mild[.]" AT 27.

In light of the medical record and evidence of plaintiff's daily activities, discussed above, the undersigned concludes that the ALJ used the proper process and provided proper reasons in finding plaintiff "not entirely credible" about the limiting effects of her symptoms.

////

---

[3] Although plaintiff arrived at the hearing in a wheelchair, when the ALJ asked for details about what doctor prescribed it, how long plaintiff had to use it, and how often she had to use it, plaintiff testified that Dr. Senegor prescribed it "when I got my surgery," but did not provide further details of any such prescription. AT 39-40. "I'm not saying I cannot walk," plaintiff stated in response to questioning. AT 40-41. "I can walk." She further testified that, when she walked her children to school, she used a wheelchair or walker "because I feel like my back is going to break." AT 41.

D. Other Work

Finally, plaintiff claims that the Commissioner failed to establish that there is other work in the national economy that plaintiff could perform. See Bruton v. Massanari, 268 F.3d 824, 828 n.1 (9th Cir. 2001) ("At Step Five . . . , the Commissioner bears the burden of proving that the claimant can perform other jobs that exist in substantial numbers in the national economy. 20 C.F.R. § 416.920(f). There are two ways for the Commissioner to meet this burden: (1) by the testimony of a vocational expert or (2) by reference to the grids.") (internal citations omitted).

In this case, the Commissioner employed the testimony of a vocational expert. AT 46-49. Plaintiff contends that, when the ALJ posed hypothetical questions to this expert about what jobs plaintiff could do given her limitations, he failed to pose a "complete" hypothetical that included all of the limitations supported by the record.

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Here, the ALJ asked about representative jobs that could be performed with the following limitations: "light work with occasional posturals, climbing, balancing, stooping, kneeling, crouching, and crawling" (AT 46) ; "sedentary work . . . that can be performed by using a handheld assistive device required for uneven terrain or prolonged ambulation" (AT 47); and "if a person, because they were partially confined in a wheelchair, could stand and walk less than two hours" (AT 48). The first two hypotheticals correspond to the ALJ's determination of plaintiff's residual functional capacity in Step Four. Upon review of the medical evidence concerning plaintiff's need for a wheelchair, the ALJ determined that the third hypothetical did not apply. See

11

1  AT 48-49.

2  Plaintiff asserts that these hypothetical questions failed to include "the limitations of Dr. Sengor, whose opinion was improperly rejected" and plaintiff's "credible testimony." ECF No. 16-1 at 22.  These issues have been addressed herein, and the ALJ's conclusions found to be supported by the record.  The court also finds no error in the ALJ's questions to the vocational expert who, based on these hypotheticals, testified that there was work in the national economy plaintiff could perform.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. **1**9) is granted; and

3. Judgment is entered for the Commissioner.

Dated: July 20, 2017

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 roming1249.ssi.ckd